UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number:  12-23193-CIV-MORENO

OSMILDO RODRIGUEZ, JESUS B. SIMON,
and JONATHAN GONZALEZ,

       Plaintiffs,

vs.

PAN & PLUS BAKING, LLC, *et al.*,

       Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon the defendants' Motion for Summary Judgment (D.E. No. 32). Plaintiffs Osmildo Rodriguez, Jesus B. Simon, and Jonathan Gonzalez brought suit for violations of the Fair Labor Standards Act's overtime provisions ("FLSA"). In response, Defendants Hernan Arancibia, Jorge A. Castano, Pan Plus CA, LLC, Pan Plus CC, LLC, Pan & Plus Baking, LLC, and Unique Bakery Equipment, LLC filed a motion for summary judgment challenging Santana's overtime compensation claims under the Act. The seventh defendant, Miguel Castaneda, has not moved for summary judgment.[1]  The defendants contend that Plaintiffs Rodriguez, Gonzalez, and Simon are exempt employees under the Motor Carrier Exemption to the FLSA. 29 U.S.C. § 213(b)(1).  Because the plaintiffs' claims fail to create a genuine issue of material fact as to their coverage under the Motor Carrier Exemption, this Court grants the defendants' motion for summary judgment.

_____

[1]For purposes of this Order on the summary judgment motion,  the term "defendants" refers to Hernan Arancibia, Jorge A. Castano, Pan Plus CA, LLC, Pan Plus CC, LLC, Pan & Plus Banking, LLC, and Unique Bakery Equipment, LLC and *not* Miguel Castaneda.

## I.  BACKGROUND

The defendant entities, Pan Plus CA, LLC, Pan Plus CC, LLC, Pan & Plus Banking, LLC, and Unique Bakery Equipment, LLC, (together, "Pan Plus") are in the business of selling imported bakery products. The majority of products sold by the defendants are purchased from foreign vendors, including a Chilean company called Maquipan Chile S.A., a Spanish company called Bellsolà, S.A., and a Canadian company called United Bakery Manufacturers. For purposes of the present motion, the defendant entities are considered to be a joint enterprise with common ownership, control, and business purpose. Defendant Jorge A. Castano is a principal with full operational control of all the defendant entities and the Chilean company. The defendant entities ordered the foreign bakery products according to input from the defendants' Florida customers, most of which do business in Miami, Florida. Once imported, the products were stored at a Miami warehouse awaiting delivery.

The plaintiffs were employed as refrigerated truck drivers for the defendant entities. Plaintiff Rodriguez worked for the defendants from June of 2009 to March of 2012. Plaintiff Gonzalez worked at Pan Plus from June of 2003 to March of 2012. Plaintiff Simon worked for the defendants from December of 2006 to July 2012. While employed by the defendant entities, the plaintiffs delivered bakery products to Florida customers. All three plaintiffs held commercial driver's licenses during their employment, which allowed them to drive tractor trailer trucks leased by the defendants. Plaintiff Gonzalez and Plaintiff Rodriguez drove the companies' trucks during the entirety of their employment. Plaintiff Simon worked as a truck driver until November of 2011, when he was transferred to the defendants' warehouse. There, his work consisted of loading bakery products and display cases onto the delivery trucks.  Plaintiff Simon was also expected to continue driving

delivery trucks during the time period in which he worked at the warehouse.

## II.   SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Consequently, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating whether the movant has met this burden, a court must view all the evidence in the light most favorable to the non-moving party. Once the movant has met its burden under Rule 56, the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Additionally, an employer seeking to assert an FLSA exemption has the burden of proving that the employee falls "plainly and unmistakably within the terms and spirit" of the exemption. *Morrison v. Quality Transports Services, Inc.*, 474 F. Supp. 2d 1303, 1308 (S.D. Fla. 2007); *see also Nicholson v. World Bus. Network, Inc.*, 105 F. 3d 1361, 1364 (11th Cir.1997). Due to the statute's remedial nature, exemptions from the FLSA's coverage are generally construed narrowly against the employers seeking to assert them. *Morrison*, 474 F. Supp. 2d at 1308 (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). However, the Motor Carrier Act, the statute which provides the exemptions at issue in this case, is likewise a remedial statute and should also be broadly construed. *Galbreath v. Gulf Oil Corp.*, 413 F.2d 941, 946 (11th Cir. 1969) (quoting

*Crescent Express Lines v. U.S.*, 320 U.S. 401, 409 (1943)).

## III.   DISCUSSION

The plaintiffs claim they worked in excess of forty hours per week during their employment and are therefore entitled to overtime compensation from their former employers under the FLSA. Pursuant to the Act, an employer must compensate employees not less than one and one-half times their regular rate for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). In the event that an employer fails to pay overtime, where required by law, an employee may sue an employer for unpaid overtime wages. 29 U.S.C. § 216(b). The defendants have moved for summary judgment on the grounds that the plaintiffs are not due overtime wages because they are exempt employees under the Motor Carrier Exemption and thus not entitled to overtime pay. *See* 29 U.S.C. § 213(b)(1). The defendants offer an additional and slightly different exemption argument as to Plaintiff Simon who, the defendants claim, also worked as a part-time loader during his employment with the defendants and is exempt as such under 29 C.F.R. § 782.3(b) (citing *Levinson v. Spector Motor Service*, 330 U.S. 649, 661 (1947) (explaining that the employees of private or contract carriers of property by motor vehicle subject to the Interstate Commerce Act include drivers, mechanics, loaders, and helpers, all of which perform duties which directly affect safety of operation)).

The plaintiffs, on the other hand, contend that they are not exempt from the FLSA's overtime pay requirements for the following reasons: First, the plaintiffs argue that the defendants have not put forth record evidence to show that the defendants' transportation of goods takes place in interstate commerce. The plaintiffs claim that the transportation of goods in this case was intrastate in nature, removing the defendant entities from the jurisdiction of the Secretary of Transportation and thus

-4-

from the Motor Carrier Exemption. Second, with respect to Plaintiff Simon, the parties disagree as to whether that employee worked as a "loader" as defined in 29 C.F.R. § 782.5(b). Specifically, the plaintiffs argue that Simon was not an employee whose job activities consisted "wholly or in part of doing, or immediately directing, a class of work defined: (1) As that of a loader, and (2) as directly affecting the safety of operation of motor vehicles in interstate or foreign commerce within the meaning of the Motor Carrier Act[.]" 29 C.F.R. § 782.5(b).

<u>The Motor Carrier Exemption</u>

The FLSA exempts from its overtime provisions "any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of [the Motor Carrier Act]." *Walters v. American Coach Lines of Miami, Inc.*, 569 F. Supp. 2d 1270, 1281 (S.D. Fla. 2008) (quoting 29 U.S.C. § 207(a) (1)). Whether the Motor Carrier Exemption applies "is dependent on whether the Secretary has the power to regulate, not on whether the Secretary has actually exercised such power." *Baez v. Wells Fargo Armored Servo Corp.*, 938 F.2d 180, 181 n.2 (11th Cir. 1991).

According to the Department of Labor regulations enforcing the FLSA, the applicability of the Motor Carrier Exemption "depends both on the class to which [the employee's employer] belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). Thus, to qualify for the Motor Carrier Exemption, the employer must establish two things: (1) that it is a carrier who is subject to the Secretary of Transportation's jurisdiction and (2) that the employees engages in activity that affects the safety of operation of motor vehicles in the transportation of passengers or property in interstate commerce. *See* 29 C.F.R. §§ 782.2(a)-(b) (2); *see also Alvarado v. I.G.W.T. Delivery Systems, Inc.*, 410 F. Supp. 2d 1272, 1276 (S.D. Fla. 2006).

*Employer's Classification*

The first prong, whether an employer is properly classified as a carrier under the jurisdiction of the Secretary of Transportation, is always satisfied where the Secretary has exercised jurisdiction over the employer. *See Mena v. McArthur Dairy, LLC,* 352 Fed. Appx. 303, 306 (11th Cir. 2009). Here, the defendants have offered no evidence showing that any of the entities are registered with or regulated by the Department of Transportation. However, this is not the end of the inquiry. *See Walters v. American Coach Lines Of Miami, Inc.,* 575 F.3d 1221, 1226 (11th Cir. 2009) ("[T]he Secretary of Transportation does not have to exercise the authority granted to him by the [Motor Carrier Act] for the motor carrier exemption to be applicable; instead, his power to regulate under the act merely needs to cover a particular group of employees.").

The Motor Carrier Act gives the Secretary of Transportation the general power to prescribe "qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502(b)(2). A "motor private carrier" is defined as—

a person, other than a motor carrier, transporting property by motor vehicle when-

(A) the transportation is as provided in section 13501 of this title;
(B) the person is the owner, lessee, or bailee of the property being transported; and
(C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102(15). Viewed as a joint enterprise, the defendant entities fit this definition. Together, the companies operate as a "person ... transporting property by motor vehicle." The Court finds that by purchasing the foreign baked goods through the Unique Bakery Equipment entity, Pan Plus is properly considered "the owner ... of the property being transported," and that the property was being transported for sale to the Florida customers during the plaintiffs' employment. 49 U.S.C. §

-6-

13102(13); *see also Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F. 3d 217, 222 -223 (2d Cir. 2002)(concluding that a beer distributor that obtained most of its inventory from out-of-state suppliers and breweries fell within the Motor Carrier Act's definition of motor private carrier); *Collins v. Heritage Wine Cellars, Ltd.*, 2008 WL 5423550, at *22 (N.D. Ill. 2008)(finding the Motor Carrier Exemption applied to a wine importer and distributor's intrastate transportation to retailers where inventory originated in various foreign countries).

While the defendant companies appear to fit within the definition of a motor private carrier under the jurisdiction of the Secretary of Transportation, they must nevertheless demonstrate that the transportation they perform is "as provided in § 13501" of title 49—namely, that the transportation is interstate in nature.

*Interstate Nature of Transportation*

Section 13501 gives the Secretary jurisdiction over transportation by motor carrier to the extent that passengers, property, or both, are transported—

(1) between a place in—

> (A) a State and a place in another State;
> (B) a State and another place in the same State through another State;
> (C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States;
> (D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or
> (E) the United States and a place in a foreign country to the extent the transportation is in the United States; and

(2) in a reservation under the exclusive jurisdiction of the United States or on a public highway.

49 U.S.C. § 13501. The parties agree that the plaintiffs' transportation of the bakery products took place entirely in the state of Florida. However, Section 13501's interstate commerce requirement is still

satisfied if the goods being transported within the borders of one state are involved in a "practical continuity of movement" in the flow of interstate commerce. *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943). Put another way, "purely intrastate transportation can constitute part of interstate commerce if it is part of a continuous stream of interstate travel. For this to be the case, there must be a practical continuity of movement between the intrastate segment and the overall interstate flow." *Walters*, 575 F.3d at 1229 (internal quotations omitted). A critical factor in determining the shipment's essential character is the shipper's[2] "fixed and persisting intent" at the time of the shipment. 29 C.F.R. § 782.7(b)(2). The United States Court of Appeals for the Eleventh Circuit has looked to "practical considerations" when determining whether the shipment is intrastate or interstate in nature. *See Walters*, 575 F.3d at 1221. Accordingly, this Court takes a common-sense approach to the character of the defendant companies' shipments of bakery products.

The nature of the transportation in this case can be determined by examining the "intention formed prior to shipment, pursuant to which property is carried to a selected destination by a continuous or unified movement[.]" *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 699 (11th Cir. 1986); *see also Project Hope v. M/V Ibn Sina*, 250 F.3d 67, 74 (2d Cir.2001)(noting that

---

[2]The plaintiffs argue that the defendants are not the "actual shipper" of the property transported by plaintiffs. Citing *Mena*, 352 Fed. Appx. at 307, the plaintiffs contend that the defendants have failed to provide record evidence establishing them as the shippers of the goods in question. However, the defendants in paragraph 5 of their Statement of Undisputed Facts make clear their business purpose: to purchase foreign baked goods (through the Unique Bakery Equipment, LLC entity) specifically for delivery to Florida customers. It is not clear from the plaintiffs response who, if not the defendant entities, would be the shipper of those baked goods for purposes of determining the "shipper's intent" as products moved in interstate commerce. The Court finds analogous the cases cited by the defendants dealing with importer/ distributors of wine and beer originating from out of state. *See Collins*, 2008 WL 5423550, at *15 (rejecting employees' argument that wine manufacturers rather than employers/ distributors should be considered the "shipper" in the fixed and persisting intent analysis); *Bilyou*, 300 F. 3d at 225.

the nature of transportation can be "determined by reference to the intended final destination" of the transportation when that ultimate destination was envisaged at the time the transportation commenced); *see also Bilyou*, 300 F. 3d at 224-25. Here, the defendants intended to deliver several varieties of "Hispanic" baked goods, a portion of which are produced in Chile, Spain, and Canada, to customers in Florida.[3] In some cases, the defendants imported and transported the goods to fill certain specific customers' pre-existing orders. In other instances, the goods were purchased and transported in anticipation of projected customer demand for these foreign products. The fact that the shipments did not all correspond to specific customer orders does not, by itself, support a finding that there was no fixed and persisting intent to ship goods in interstate commerce. *See Collins*, 2008 WL 5423550, at *18.

Regardless of the circumstances surrounding the individual shipments, the defendants' overall intention was clear. It is reflected by the shipper's purchase of specialty baked goods from foreign manufacturers and the subsequent, continuous transportation of those goods from their points of origin to defendants' customers in Florida. That products were sometimes warehoused at the defendants' facility for periods not exceeding two weeks does not change the "practical continuity of movement" analysis. *See Wailing v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1948) ("The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey."). The intrastate transportation of these products was part of a "practical continuity of movement" from manufacturers in Chile, Spain, and Canada to the customers' Florida stores. The Court finds that this movement satisfies the Motor Carrier Act's interstate commerce requirement and is thus sufficient to place the transportation of the goods under the Secretary's jurisdiction pursuant to 49 U.S.C. §

---

[3] The plaintiffs' depositions also make reference to Argentinian bakery products. *See, e.g.* Simon Dep. at pp. 18-20.

13501(1)(E).

*Employees' Duties*

Turning to the second prong, the parties do not dispute that the plaintiffs are or were employed as drivers for the plaintiffs. The Court finds that Plaintiffs Rodriguez and Gonzalez were required to drive on public highways and that this affected the safety of operation of motor vehicles. *See* 29 C.F.R. § 782.2(b)(2); 29 C.F.R. § 782.3(a). As discussed, the parties' dispute over the applicability of the Motor Carrier Exemption centers on whether the plaintiffs were engaged in interstate commerce when making local deliveries to the defendants' customers. The Court has already determined that the plaintiffs transported property in interstate commerce during the time they moved the bakery products from the defendants' warehouse to customers. Accordingly, the Court finds that Plaintiffs Rodriguez and Gonzalez are exempt employees under the Motor Carrier Exemption to the FLSA.

As for Plaintiff Simon, the parties agree that he worked as both a truck driver and a warehouse employee at different times during his employment. In his deposition, Plaintiff Simon testified that his primary duty while employed by the defendants was as a truck driver and that he delivered products on behalf of the defendant entities on a daily basis. Simon Dep. at p. 14. Beginning on December 22, 2006, Mr. Simon worked exclusively as a truck driver for defendants. It was not until November of 2011 that Mr. Simon's duties changed to those of a warehouse employee. *Id.* at pp. 34-36. For the reasons stated, the Court finds that Mr. Simon was an exempt employee during the period ranging from December of 2006 to November of 2011. For the period in which Mr. Simon worked as a warehouse employee, the parties disagree as to whether he was a FLSA-exempt "loader" as defined in 29 C.F.R. § 782.5(a).

The Motor Carrier Exemption applies to an employee whose job involves activities consisting

of doing a class of work defined: (1) As that of a loader, and (2) as directly affecting the safety of operation of motor vehicles in interstate or foreign commerce within the meaning of the Motor Carrier Act, since such an employee is an employee with respect to whom the Secretary of Transformation has power to establish qualifications and maximum hours of service. 29 C.F.R. § 782.5(b). A "loader," as defined for Motor Carrier Act jurisdiction is—

> an employee of a carrier subject to section 204 of the Motor Carrier Act (other than a driver or driver's helper as defined in §§ 782.3 and 782.4) whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country. A "loader" may be called by another name, such as "dockman," "stacker," or "helper," and his duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a "loader," in work directly affecting "safety of operation" so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized.

29 C.F.R. § 782.5(a) (citations omitted). Plaintiff Simon testified at his deposition that during the period beginning in November, 2011 and ending in July, 2012, his duties included loading and unloading the refrigerated delivery trucks with bakery products and display cases for use by the retail customers. Simon Dep. at pp. 33-34. Using a forklift and a pallet jack, Mr. Simon loaded all of the outgoing product onto the delivery trucks, almost always by himself. Simon Dep. at p. 29. When analyzed in conjunction with a plain reading of the definition contained in 29 C.F.R. § 782.5(a), it certainly appears that Mr. Simon' s warehouse duties were those of a loader. His work included "unloading and the transfer of freight between the vehicles and the warehouse," and the fact that he often loaded the delivery trucks by himself indicates that he exercised the required judgment and discretion in "placing, distributing, or securing the pieces of freight" in a manner

meant to ensure the efficient and safe operation of the delivery trucks. While the parties dispute whether or not Plaintiff Gonzalez occasionally instructed Plaintiff Simon on how to load the former's truck, the Court does not find that this guidance removed Plaintiff Simon's ability to exercise judgment and discretion in carrying out his freight loading duties. The Court thus finds that the Motor Carrier Exemption also applies to Plaintiff Simon during the time period in which he worked at the warehouse as a loader.

## IV.CONCLUSION

Accordingly, this Court finds that the there are no genuine issues of material fact as to whether the Motor Carrier Exemption applies to the transportation of bakery products by plaintiffs in their roles as truck drivers and, in the case of Plaintiff Simon, as a loader. The goods in this case were transported as part of a practical continuity of movement in the flow of interstate commerce. It is therefore

**ADJUDGED** that defendants' Motion for Summary Judgment is GRANTED. Pursuant to Fed. R. Civ. P. 56 and 58, and for the reasons stated above, the plaintiffs' complaint is DISMISSED as to Defendants Hernan Arancibia, Jorge A. Castano, Pan Plus CA, LLC, Pan Plus CC, LLC, Pan & Plus Banking, LLC, and Unique Bakery Equipment, LLC. It is further

**ADJUDGED** that the defendants' Motion to Dismiss (D.E. No. 19) is DENIED as MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 17 day of April, 2013.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record